IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** | : |
| | : |
| v. | : 05cr294 (EGS) |
| | : |
| **TY CLARK** | : |

DEFENDANT'S SENTENCING MEMORANDUM

Ty Clark, the Defendant, respectfully submits the following memorandum to aid the Court in determining an appropriate sentence.

On December 12, 2005, Mr. Clark pled guilty to possessing a firearm by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year on July 6, 2005, and to possessing with intent to distribute cocaine on July 15, 2005. His sentencing was postponed to afford all parties the benefit of this circuit's resolution of the then-open issue of the propriety of continuing to sentence crack cocaine, as opposed to powder cocaine, offenders pursuant to the 100-to-1 ratio perpetuated in section 2D1.1 of the now-advisory sentencing guidelines.

I.   Sentencing Crack Cocaine Offenders After *Pickett* and *Kimbrough*

Both parties briefed the issue summarized above. Since the filing of those briefs, the D.C. Circuit decided *United States v. Pickett,* 475 F.3d 1347 (D.C. Cir. 2007), and the Supreme Court decided *Kimbrough v. United States,* 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).

In *Pickett,* our circuit ruled that it was reversible error for a sentencing judge to refuse to take into account the 100:1 ratio perpetuated in §2D1.1 of the Guidelines, "and the problems [that ratio] raises in sentencing crack cocaine dealers" 475 F.3d at 481. In *Kimbrough,* the Supreme Court reversed the Fourth Circuit's holding that an outside Guidelines sentence is *per se* unreasonable when based solely on disagreement with the 100:1 ratio perpetuated in §2D1.1. 128 S.Ct at 573-74.

Instead, *Kimbrough* instructed, judges may and should consider the disparity between the Guidelines' treatment of crack and powder offenses. *Id.*.

Thus, it is now settled that this Court can and should consider the disparate treatment of crack versus powder cocaine offenders, and take into account, among other things, the sentencing disparity created by a Guidelines range 100 times greater for crack than for powder cocaine offenders.

In this case, Mr. Clark pled guilty to possessing with intent to distribute 21.2 grams of crack cocaine and 112.4grams of marijuana. That amount of crack cocaine alone results in a base offense level 26; a result which is not impacted by the addition of 112.4 grams of marijuana.[1] With Mr. Clark's criminal history of 0, *i.e.,* category I, the resultant Guideline range for the drugs alone is 63-78 months. A person convicted of possessing with intent to distribute, instead, 21.2 grams of powder cocaine would face a base offense level 12, with resultant Guidelines range 10-16 months.

For all of the reasons set forth in counsel's initial Memorandum in Aid of Sentencing Regarding Application of Powder vs. Crack Cocaine Guidelines, (filed in January 2006), undersigned counsel urges the Court to consider, instead of a 100:1 ratio in this context, a 1:1 ratio, *e.g.,* to adopt the Guidelines range applicable to the possession with intent to distribute powder cocaine: 10-16 months.

---

[1] In other words, adding 112.4 grams of marijuana to 21.2 grams of cocaine (even after converting all drugs to their marijuana equivalency) does not impact the base offense level applicable to between 20-35 grams of crack cocaine.

II.     The Two Point Gun Bump Does Not Apply in Calculating Mr. Clark's Guidelines Range[2]

Paragraph 18 in the final presentence report reflects the addition of two points pursuant to Sentencing Guidelines §2D1.1(b)(1), which provides that 2 points are to be added "if a dangerous weapon "was possessed." As application note 3 makes clear, however:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

application note 3, §2D1.1.

Even assuming that the gun which is being used to enhance Mr. Clark's sentence is the gun in his possession on July 6, 2005, the enhancement should not apply because on that day, officers discovered 23.7 grams of marijuana concealed within the van, while Mr. Clark was standing some distance outside the van, talking with others. The gun, which was loaded but did not contain a round in the chamber, was in Mr. Clark's waistband outside the van. Moreover, Mr. Clark explained to officers on July 6, 2005, before they found the gun: "I got a gun on me. I got robbed yesterday. I don't have one in the chamber." Thus, it is clearly improbable that the gun was connected with the offense. *Compare U.S. v. Williams,* 1999 WL 1212883 (Oct. 25, 1999)[Crim. No. 88-410(ESH)] (2 point gun bump appropriate where, because defendant threw gun out window along with two bottles containing drugs, it was not "clearly improbable" that guns were connected with the offense).

---

[2] On February 20, 2006, counsel noted an objection to the assessment of the 2 point gun bump by executing the comments section to the receipt and acknowledgment form accompanying the original presentence report. However, the very conscientious presentence report writer both includes the 2 point gun bump, and the comment that the defendant's "objections were resolved" in the final presentence report. Nonetheless, counsel does not recall whether or how the objection was resolved.

3

III.     Factors Which Warrant a Sentence Significantly Lower than Mr. Clark's Guidelines Range

Mr. Clark has a single felony conviction, 18 years ago, for attempted distribution of cocaine. Mr. Clark received a suspended sentence with two years of probation, the terms of which he complied with so successfully that the was granted early termination after just 18 months of probation. Since then, Mr. Clark has been arrested in only one misdemeanor offense, which was promptly "no papered," *i.e.,* the day after arrest a prosecutor decided that the case lacked prosecutorial merit. For good reason, the Presentence Report Writer recognizes Mr. Clark's lack of any criminal record in the past 18 years, as a basis to sentence Mr. Clark below his advisory Guidelines range. *See* PSR at para 83.

The presentence report writer points to Mr. Clark's compliance with the conditions of his pretrial release, and the active role Mr. Clark plays in his daughter's life, as additional factors warranting a sentence below the applicable advisory Guidelines range. *Id..*

Since April 27, 2007, Mr. Clark has remained in the high intensity supervision program, (hereinafter HISP), which as the Court is aware, imposes restrictions on participant's activities which are onerous enough that many participants find it impossible to comply. Quite often, HISP participants whose cases are, for whatever reason, postponed for any length of time, seek reductions in the level of their supervision citing the significant restraints on liberty (curfew, drug testing, etc.,) as too severe to fairly impose over any appreciable length of time.

Not once since April 27, 2007, has Mr. Clark even asked counsel to seek a reduction in the level of his supervision. Since April 27, 2007, Mr. Clark has complied perfectly with his curfew condition; has complied perfectly with his reporting and drug testing requirements, and has incurred

one single positive drug infraction on August 29, 2006, a result which counsel contested as attributable to Mr. Clark's use of a prescription drug containing codeine.

Mr. Clark's ability to perfectly comply with these conditions of release for over two years, is ample evidence that Mr. Clark can successfully complete any period of community supervision the Court might impose.

In addition, Mr. Clark has been instrumental in the care and upbringing of his only child, 15 year old daughter Tyra Clark. According to everyone interviewed by the presentence report writer, Mr. Clark provides financial and emotional support to Tyra, who Mr. Clark sees almost every day. Tyra's mother struggles with an addiction, and Mr. Clark often steps in to care for not only Tyra but her half-siblings, who are not his children, when Tyra's mother is not able to do so.

Mr. Clark carries the sickle cell trait and lost both of his only two siblings, and his father, to sickle-cell related illness. Mr. Clark's brother died when Mr. Clark was two, and his sister, with whom he was very close, died when Mr. Clark was 32 years old. The Court can take into account Mr. Clark's consequently decreased life expectancy in determining an appropriate sentence. Just as a person's deportable alien status can render incarceration a great hardship, so, too, could it be cognizably harder on a person who can expect to have his life shortened by illness, to be incarcerated for any period of that shortened life. *Compare United States v. Smith,* 27 F.3d 649, 651 (D.C. Cir. 1994)(downward departure appropriate where status a deportable alien renders incarceration a greater hardship).

Mr. Clark is a person who has proven himself sorry for his conduct and able to live a law abiding life. After his release from incarceration in this case in April 2007, Mr. Clark secured employment at Catholic Charities, for whom he prepares and delivers meals often to the mentally

challenged population. Mr. Clark reported to the presentence report writer that the job has opened his eyes to the mentally challenged population in Washington, causing him to reflect on the years he dealt drugs and the negative impact that activity likely had on the community, including the mentally challenged.

WHEREFORE, Mr. Clark asks that the Court take these matters into account in fashioning an appropriate sentence.

Respectfully submitted,

_____/s/_____
Nikki Lotze
Roberts & Wood
6801 Kenilworth Avenue, #202
Riverdale, MD 20737
(301) 699-0764

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's supplemental memorandum in aid of sentencing has been delivered via facsimile and by mail, this 11day of April, 2008, to:

AUSA Jeff Pearlman
Office of the States Attorney
555 Fourth Street, NW
Washington, D.C. 20530

_____/s/_____
Nikki Lotze